IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


RONALD JACKSON,                    :
                                   :
            Plaintiff              :
                                   :
      v.                           :    CIVIL NO. 3:CV-09-2129
                                   :
JEFFREY BEARD, ET AL.,             :    (Judge Conaboy)
                                   :
            Defendants             :

_____

**MEMORANDUM**
**Background**

        This pro se civil rights action pursuant to 42 U.S.C. §
1983 was filed by  Ronald Jackson (Plaintiff), an inmate presently
confined at the State Correctional Institution, Huntingdon,
Pennsylvania (SCI-Huntingdon).  An eighty-five (85) page at times
repetitive and illegible Amended Complaint (not including exhibits)
was subsequently filed.  See Doc. 66.

        By Memorandum and Order dated September 12, 2011, this Court
granted a motion to dismiss the Amended Complaint filed by
Defendant Physician's Assistant (PA) Kristen Barbacci.  See Doc.
86.  Remaining Defendants include Secretary Jeffrey Beard, Chief
Grievance Officer Dorina Varner, former Chief Grievance Officer
Cindy Watson, Office of Professional Responsibility Director James
Barnacle, and Hearing Examiner Kristen Reisinger of the
Pennsylvania Department of Corrections (DOC).

        Plaintiff is also proceeding against the following employees
at his prior place of confinement, the State Correctional
Institution, Camp Hill, Pennsylvania (SCI-Camp Hill): ex-

1

Superintendents John Palakovich and Donald Kelchner; ex-Deputy
Superintendent Richard Southers; Major John Horner; Unit Manager
Chris Chambers; Psychological Services Specialist Edward Kalsky;
Captain Leggore; Lieutenants Klinedinst, Kazur, McNeal, McElwain,
and Simms; Sergeants Swift, Jones, Taylor, Warner, and Eger; and
Correctional Officers (COs) Bridwell, Hartman, Brant, Huber,
Gerber, Spieles, Weis, Bickert, Clark, Gemberling, Martz, Liddick,
and Flinn.

According to the Amended Complaint, Plaintiff was
transferred from the State Correctional Institution, Graterford,
Pennsylvania (SCI-Graterford) to SCI-Camp Hill on or about October
3, 2007.[1]  Upon his arrival, Jackson was placed in the prison's
Special Management Unit (SMU).[2]  Thereafter a purported conspiracy
of SCI-Camp Hill SMU officials allegedly retaliated against the
Plaintiff for his initiation of lawsuits and grievances at SCI-
Graterford. See Doc. 66, p. 5.

Jackson initially claims that retaliatory actions committed
by a conspiracy of SMU officials made it "nearly impossible" to
pursue a criminal appeal and civil litigation. See Doc. id., p. 6.
Specifically, it is alleged that Correctional Officers Martz and
Huber confiscated some of Plaintiff's personal legal and non-legal
property upon his arrival at the prison.  It is also asserted that
those two Defendants subjected him to verbal harassment and

---

1.  Jackson indicates that he was transferred from SCI-Camp Hill on
or about March 9, 2009.  See Doc. 66, p. 5.

2.  The SMU houses prisoners who are disruptive and or violent.

interfered with his legal mail.[3]  See id. at p. 15-16.  On the day
he was transferred from SCI-Camp Hill, March 9, 2009, Plaintiff was
subjected to a further retaliatory loss of property.  See id. at p.
10.

Plaintiff next describes multiple instances of retaliatory
deprivation of meal trays and being served with adulterated food,
actions which allegedly caused the inmate to suffer significant
weight loss.  See id. at pp. 18-22, 25.  Jackson was also
purportedly placed in an unsanitary SMU cell with a leaking toilet,
no linen, a blinking security light, no cleaning supplies, with no
shoes or clothes but a jumpsuit.  See id. at pp. 9, 12, 69-71.
Plaintiff additionally indicates that he was not provided with
adequate recreation, showers, or access to the mini-law library.

On or about January 26, 2009, Plaintiff states that he was
sprayed with a chemical agent for refusing a cell search.  Jackson
indicates that he was also issued a false misconduct charge as a
result of that incident, and he received other alleged false
disciplinary charges for events which transpired on March 25, 2008,
April 15, 2008, November 16, 2008, and December 2, 2008.  See id.
at pp. 10, 28, 29, 34-35.  Jackson adds that he was denied due
process during the resulting disciplinary proceedings as well as
with respect to his institutional grievances.  There are also
claims that he was subjected to retaliatory cell searches (see id.
at p. 25) and excessive force (see id. at pp. 30, 64-67, 75-76, 80-

_____

3.  The Amended Complaint includes additional assertions of verbal
harassment attributed to other Defendants.

3

81).[4]  Finally, there is a claim that Defendant Kolsky failed
and/or refused to perform a psychological evaluation of the
Plaintiff's mental instability.  See id. at pp. 82-85.

Presently pending is the Remaining Defendants' motion
requesting entry of summary judgment.  See Doc. 120.  A review of
the docket shows that although Plaintiff was granted an extension
of time in which to file an opposing brief as well as permission to
file an opposing brief which exceeded the fifteen (15) page limit,
an opposing brief and counter statement of material facts have not
been filed.

**Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery
and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the
movant is entitled to a judgment as a matter of law."  Fed. R. Civ.
P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d
Cir. 2001).  A factual dispute is "material" if it might affect the
outcome of the suit under the applicable law.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is
"genuine" only if there is a sufficient evidentiary basis that
would allow a reasonable fact-finder to return a verdict for the

---

4.  The Amended Complaint also includes allegations that there was
deliberate indifference to his medical needs.  See Doc. 66, p. 52-
53.  However, none of the Remaining Defendants were on the prison's
medical staff and the claims are directed against PA Barbacci or a
non-defendant, PA Jonsey.

non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

5

As noted above, Jackson has not filed either an opposing brief or an opposing statement of material facts.  In fact, the Plaintiff has not responded in any manner whatsoever to the pending summary judgment motion nor has he sought an enlargement of time in which to do so.

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, <u>see</u> <u>Childers v. Joseph</u>, 842 F.2d 689, 694 (3d cir. 1988), the nonmoving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  <u>Celotex</u>, 477 U.S. at 324.  In relevant part, Rule 56(e) states in relevant part :

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required in Rule 56(c), the court may:
> (2)   consider the fact undisputed for purposes of the motion;
> (3)   grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show the movant is entitled to it;

When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial.  <u>Celotex</u>, 477 U.S. at 324.  If, however, "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing

6

evidentiary matter is presented." Advisory Committee Notes to F.R.C.P. 56(e)(1963 Amend.).

Local Rule 56.1 similarly provides that all material facts set forth in the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**Official Capacities**

Remaining Defendants' initial argument contends that the claims for monetary damages against them in their official capacities must fail. See Doc. 133, p. 28.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will, 491 U.S. at 70-71; Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Jackson's damage claims brought against the Remaining Defendants in their official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[5]

_____

5. To the extent that Plaintiff is seeking injunctive relief against the individual defendants in their official capacities, such requests are not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297
(continued...)

**Personal Involvement**

Remaining Defendants' second argument contends that
Plaintiff has not sufficiently alleged personal involvement in
constitutional misconduct by DOC Defendants Secretary Beard, Chief
Grievance Officer Varner, Director Barnacle, and former Chief
Grievance Officer Watson, as well as SCI-Camp Hill Defendants ex-
Superintendents Palakovich and Kelchner, ex-Deputy Superintendent
Southers, Major Horner, Captain Leggore, Sergeant Taylor, and CO
Clark.[6]  See Doc. 133, p. 29.

The summary judgment motion maintains that there are no
factual allegations asserted against Defendants Horner or Clark in
the Amended Complaint.  Second, the claims against Southers,
Barnacle, Leggore, Kelchner, Palakovich, Varner and Watson are
solely and inadequately based upon their handling of Jackson's
institutional grievances.  With respect to Barnacle and Leggore, it
is argued that those two officials failed to properly investigate a
complaint lodged by Jackson.  As previously noted the arguments of
non-personal involvement are unopposed.

A plaintiff, in order to state an actionable § 1983 civil
rights claim, must plead two essential elements:  (1) that the
conduct complained of was committed by a person acting under color
of state law, and (2) that said conduct deprived the plaintiff of a

5.  (...continued)
F.3d 310, 323 (3d Cir. 2002).

6.  While the caption of Remaining Defendants' argument indicates
that it is being asserted in part on behalf of Sergeant Taylor, the
body of the argument is silent with respect to said defendant.

right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723, at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden solely based upon the substance or

9

lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Although the handwritten lengthy Amended Complaint is at times difficult to decipher, this Court agrees that there are no factual assertions set forth therein against either Defendant Horner or Defendant Clark.  Accordingly, under the standards announced in Rode, those two Defendants are entitled to entry of dismissal.[7]

This Court also agrees that the claims asserted against Secretary Beard, Chief Grievance Officer Varner, Director Barnacle, and former Chief Grievance Officer Watson, as well as SCI-Camp Hill Defendants ex-Superintendents Palakovich and Kelchner, ex-Deputy Superintendent Southers, and Captain Leggore are based upon either their respective supervisory capacities within the DOC or prison, or their handling of grievances and complaints filed by Jackson. Under either approach, there is no basis for § 1983 liability.  The

_____

7.  This conclusion is bolstered by Plaintiff's failure to address the lack of personal involvement argument.

unopposed request that those eight (8) Defendants are entitled to
entry of summary judgment will be granted.[8]

## **Administrative Exhaustion**

Remaining Defendants next assert that summary judgment
should be granted in favor of Defendants Psychological Services
Specialist Kalsky, Lieutenant Simms, Sergeants Warner and Eger, and
COs Spieles and Gemberling on the basis of non-exhaustion of
administrative remedies.  See Doc. 133, p. 36.

They contend that Plaintiff did not file any grievances
regarding (1) the condition of his initial SMU cell which
implicates Defendant Spieles; (2) his mental health treatment claim
against Defendant Kasky; (3) cell searches and property
confiscations which allegedly occurred during October-November,
2007, February 15, March 18, March 28, May 19, July 26, or July 30,
2008; or January 15, 2009; and (4) the November 20, 2007 incident
during which tobacco juice was spit in his cell by a correctional
officer.  See id. at p. 34.

It is also asserted that Jackson failed to file grievances
to final review regarding his claims of: (1) confiscation of
personal property in June, 2008; (2) mail tampering including the
claims against Defendants Simms, Eger, Spieles, Warner, and
Gemberling; and (3) denial of access to the courts.  See id.

Section 1997e(a) of title 42 U.S.C. provides:

---

8.  Given that the eighty (80) page handwritten Amended Complaint
is often difficult to read, if Plaintiff can point to any factual
allegation showing personal involvement by those officials, he may
seek reconsideration of this determination.

> No action shall be brought with respect to
> prison conditions under Section 1979 of
> the Revised Statutes of the United States
> (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail,
> prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action.  Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, at *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.  See Jones v. Bock, 549 U.S. 199, 216 (2007);  see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense

of non-exhaustion to plead and prove it.[9]  The United States
Supreme Court in Jones noted that the primary purpose of the
exhaustion requirement is to allow prison officials to address
complaints before being subjected to suit, reducing litigation to
the extent complaints are satisfactorily resolved, and improving
litigation that does occur by leading to the preparation of a
useful record.

The administrative exhaustion mandate also implies a
procedural default component.  Spruill v. Gillis 372 F.3d 218, 222
(3d Cir. 2004).  As explained by the Third Circuit Court of
Appeals, a procedural default rule "prevents an end-run around the
exhaustion requirement."  Id. at 230.  It also ensures "prisoner
compliance with the specific requirements of the grievance system"
and encourages inmates to pursue their administrative grievances
"to the fullest."  Id.  Similarly, the Supreme Court has observed
that proper exhaustion of available administrative remedies is
mandatory, meaning that prisoners must comply with the grievance
system's procedural rules, including time limitations.  Woodford v.
Ngo, 548 U.S. 81 (2006).

A Consolidated Inmate Grievance Review System has been
established by the DOC.[10]  Section V of DC-ADM 804 (effective
December 8, 2010) states that "every individual committed to its

---

9.   In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the
United States Court of Appeals for the Third Circuit similarly
stated that "[f]ailure to exhaust administrative remedies is an
affirmative defense for the defendant to plead."

10.     The DOC's grievance system has been periodically amended.

custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

In support of their non-exhaustion argument, Remaining Defendants have submitted a declaration under penalty of perjury by SOIGA Grievance Review Officer Tracy Williams. See Doc. 131-7. Williams states that with respect to the claims raised in this action, Plaintiff filed a total of fifty-one (51) grievances, thirty (30) of which were appealed to SOIGA. See id. at ¶ 15.

14

Twenty (20) of the Plaintiff's SOIGA appeals were considered on their merits and as such were fully exhausted.

However, the remaining ten (10) final SOIGA appeals were rejected without a merits consideration for failure of Jackson to provide required documentation or being untimely, illegible or overly broad. Copies of the relevant DOC policies, administrative appeals by Jackson, and the administrative dispositions of the Plaintiff's grievances and appeals have also been submitted for review.

A review of the undisputed record, especially the declarations submitted under penalty of perjury by non-defendant correctional officials, shows that the Remaining Defendants have satisfied their burden under <u>Williams</u> of establishing that Jackson's allegations against Defendants Psychological services Specialist Kalsky, Lieutenant Simms, Sergeants Warner and Eger, COs Spieles and Gemberling were not administratively exhausted and that there is no basis for a determination that exhaustion should be excused.

The Amended Complaint generally claims that all of Plaintiff's pending claims were exhausted. Jackson does not contend that he was denied access to the administrative remedy process and has not demonstrated any basis as to why he should be excused from the exhaustion requirement. However, the Plaintiff has not opposed this summary judgment argument or otherwise contradicted the supporting evidence of non-exhaustion. Plaintiff has equally failed to satisfy his summary judgment obligation of

15

coming forward with affirmative evidence to establish a genuine issue of material fact with respect to the issue of whether there was failure to comply with the exhaustion requirement.

Pursuant to the standards set forth in Rule 56(e) and Local Rule 56.1, entry of summary judgment in favor of Remaining Defendants Psychological Services Specialist Kalsky, Lieutenant Simms, Sergeants Warner and Eger, COs Spieles and Gemberling on the basis of non-exhaustion of administrative remedies is warranted. See DiGiacomo v. Singleton, 402 Fed. Appx. 679, 681 (3d Cir. 2010)(in opposing summary judgment supported by affidavits non-moving party may not rely on allegations in his own pleading but rather by affidavits or as otherwise provided Rule 56(e) must set out specific facts showing a genuine issue for trial); Clark v. Clabaugh, 20 F.3d 1290, 1294  (3d Cir. 1994)(Rule 56(e) makes clear that a nonmoving party is required to present more than mere allegations in their pleadings when opposing a properly supported summary judgment motion).

## **Retaliation**

Plaintiff contends that he was subjected to retaliatory cell searches/confiscations of property and falsified disciplinary reports.  The Remaining Defendants next argue that those allegations do not set forth a viable retaliation claim because Jackson has failed to show a connection between his exercise of a protected right and the purported retaliatory actions.  See Doc. 133, p. 37.

16

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (<u>Id.</u>)(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (<u>Id</u>.)(quoting <u>Suppon v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." <u>Rauser</u>, 241 F.3d at 333-34(quoting <u>Mount Healthy Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  <u>See</u> <u>Lape v. Pennsylvania</u>, 157 Fed. Appx. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a <u>prima facie</u> case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected

17

conduct for reasons reasonably related to penological interest."
Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal
quotation and citation omitted).  When analyzing a retaliation
claim, it must be recognized that the task of prison administrators
and staff is difficult, and the decisions of prison officials
require deference, particularly where prison security is concerned.
Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim
need not prove that he had an independent liberty interest in the
privileges that he was denied.  Thus, the relevant inquiry is not
whether the alleged retaliatory conduct was unconstitutional.  On
the contrary, Plaintiff only needs to establish that he was
subjected to adverse action in retaliation for his engagement in
constitutionally protected conduct.

Remaining Defendants argue that the Amended Complaint does
not present facts which could arguably support a claim under Rauser
that the SCI-Camp Hill Defendants intentionally subjected him to
adverse actions as a consequence for pursuing a constitutionally
protected activity, filing a lawsuit, while he was previously
confined at SCI-Graterford. See Doc. 133, p. 39.  Based upon a
review of the Amended Complaint, this Court agrees that Jackson has
failed to set forth facts which could adequately support a claim
that he was being retaliated against for initiating a lawsuit
before he was transferred to SCI-Rockview.  As pointed out by a
declaration submitted under penalty of perjury by Remaining
Defendant Huber, he was not aware of any lawsuits initiated by

18

Jackson at SCI-Graterford prior to the prisoner's arrival at SCI-Camp Hill.  See Doc. 131-4, ¶ 15.

Additionally a declaration by SMU Unit Manager Chambers states that neither he nor any member of his staff were advised of any litigation initiated by Jackson at SCI-Graterford when he arrived at the prison.  See Doc. 131-1, ¶ 31.  Chambers adds that a copy of Plaintiff's transfer petition which accompanied the inmate from SCI-Graterford also provided no information regarding Plaintiff's involvement in litigation against official at his former place of incarceration.  See id.

The United States Supreme Court in Hudson v. Palmer, 468 U.S. 517 (1984), established that inmates have no privacy rights in their cells, consequently, there is no constitutional prohibition against prison officials conducting unauthorized cell searches. Id. at 525-26; Rambert v. Durant, No. Civ. A. 95-5636, 1996 WL 253322 *2 (E.D. Pa. May 10, 1996); Gilmore v. Jeffes, 675 F. Supp. 219, 221 (M.D. Pa. 1987).  However, it has also been held that while the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible.  Hudson, 468 U.S. at 530; Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993); Proudfoot v. Williams, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992) (stating that searches conducted for "calculated harassment" may constitute an Eighth Amendment violation).  "Nor does it mean that prison

19

attendants can ride roughshod over inmates' property rights with impunity." <u>Hudson</u> 468 U.S. at 530.

Remaining Defendants have also submitted a copy of the SCI-Camp Hill SMU policy as well as Unit Manager Chambers' declaration which provides that because of their assaultive and disruptive backgrounds SMU inmates are strip searched each time they leave their cells and on their return.  They are also moved to another cell every ninety (90) days, are limited to the amount of property they can possess in their cell at one time, subject to random security searches every thirty (30) days and security inspections every day and every time the inmate leaves the cell.  <u>See</u> Doc.131-1. ¶ 17.

In addition to not opposing this summary judgment argument, Plaintiff does not allege any facts showing that he was subjected to more cell searches, body searches, cell reassignments, or held to a more stringent code of conduct than his fellow SMU prisoners. Based upon the undisputed supporting evidence submitted by Remaining Defendants, their unopposed request for entry of summary judgment with respect to those assertions of retaliation will be granted.

An alleged false misconduct charge does not by itself qualify as a violation of the Eighth Amendment.  <u>See</u> <u>Booth v. Pensce</u>, 354 F. Supp.2d 553, 558-59 (E.D. Pa. 2005).  Rather, due process is satisfied when an inmate is afforded to be heard and to defend against an allegedly falsified or baseless misconduct

charge.  See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir.
2002).

The filing of a disciplinary charge, although not otherwise
actionable under § 1983, is actionable if done in retaliation for
an inmate's filing of a grievance pursuant to established
procedures.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989);
see also Newsom v. Norris, 888 F.2d 371, 377 (6th Cir. 1989)
(filing of false disciplinary charges is not a constitutional
violation unless charges were filed in retaliation for the exercise
of a constitutional right).

Once again, the undisputed declarations under of penalty by
SCI-Camp Hill SMU correctional staff show that any disciplinary
actions taken against the Plaintiff were not a retaliatory measure
but rather due to the fact that Plaintiff's conduct was often in
violation of SMU procedure and prison rules.  As noted by Unit
Manager Chambers at the time of his arrival at SCI-Camp Hill on
October 3, 2007 the Plaintiff already had accumulated disciplinary
custody time extending to July 19, 2008.[11]  See Doc. 131-1, ¶ 29.
Thereafter, Plaintiff continued to verbally harass and threaten
correctional staff, refuse orders, and make inappropriate at times
obscene physical gestures towards staff.  As a result, he was
issued 15 misconduct charges while in the SCI-Camp Hill SMU.  For
instance, declarations under penalty of perjury by CO Jared Weis
(Doc. 131-12) and Kimberly Sensenig (Doc. 131-18) provide that they

---

11.  DOC Chief Hearing Examiner/Assistant Counsel Jaime Boyd states
that Plaintiff had received 58 misconduct charges prior to his
placement in the SCI-Camp Hill SMU.  See Doc. 131-13, ¶ 21.

each separately issued Jackson misconduct charges for using abusive
language and refusing to obey an order.

Based upon the undisputed records and declarations submitted
by Remaining Defendants, a viable claim of retaliatory falsified
misconduct charges has not been stated and their unopposed summary
judgment argument will be granted.

**Grievance/Misconduct Procedures**

The summary judgment motion next contends that any due
process claim relating to the disposition of institutional
grievances by the Remaining Defendants including Unit Manager
Chambers must fail because the inmate did not enjoy a
constitutional right to a grievance procedure.  See Doc. 133, p.
43.  They additionally argue any claims against Hearing Examiner
Reisinger based on her handling of Plaintiff's misconduct hearing
must also fail.  See id.

As previously discussed herein, this Court agrees that
prisoners have no constitutionally protected right to a grievance
procedure.  See Jones, 433 U.S. at 137-38 (1977)(Burger, C.J.,
concurring) ("I do not suggest that the [grievance] procedures are
constitutionally mandated."); Speight, No. 08-2038, 2008 WL 2600723
at *1.  Although prisoners do have a constitutional right to seek
redress of their grievances from the government, that right is the
right of access to the courts which is not compromised by the
failure of prison officials to address an inmate's grievance.  See
Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance
regulations providing for administrative remedy procedure do not

22

create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by Plaintiff to establish liability based upon the handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander, 144 Fed. Appx. at 925 (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El, 892 F. Supp. at 275.

With respect to the due process claims against Hearing Examiner Reisinger, the Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  A protected liberty interest may be created by either the Due Process Clause itself or by state law.  Id.  Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.  Conversely, there can be no due process violation where there is no protected liberty interest.

The Supreme Court in Sandin stated that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  Sandin, 515 U.S. at 485. The Third Circuit Court of Appeals relying on the Sandin principles

23

has found no merit in due process claims presented regarding short term institutional disciplinary custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

Likewise, the Court of Appeals for the Third Circuit in Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) applied Sandin and concluded that placement in administrative custody without any type of due process hearing for a period of fifteen (15) months was not an atypical and significant hardship.  The Court of Appeals elaborated that the inmate's "commitment to and confinement in administrative custody did not deprive him of a liberty interest and that he was not entitled to procedural due process protection." Id. at 708.  It added that the prisoner's prolonged confinement in administrative custody was not cruel and unusual punishment.  Id. at 709.  Moreover, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues."  Id.

Upon his arrival at SCI-Camp Hill, Plaintiff was already serving disciplinary custody time.  As noted earlier, DOC Chief Hearing Examiner/Assistant Counsel Jaime Boyd states that Plaintiff received 58 misconduct charges prior to even being placed in the SCI-Camp Hill SMU.  See Doc. 131-13, ¶ 21.  A declaration under penalty of perjury by DOC Chief Hearing Examiner/Assistant Counsel

24

Jaime Boyd provides that while in the SCI-Camp Hill SMU Plaintiff received 15 additional misconduct charges.  <u>See</u> Doc. 131-13, ¶ 21. Defendant Reisinger presided over 12 of those misconduct proceedings.[12]  The total period of disciplinary custody imposed be Reisinger with respect to those matters was 885 days.

Although 885 days admittedly represents a prolonged period of disciplinary custody, in <u>Young v. Beard</u>, 227 Fed. Appx. 138, 141 (3d Cir. 2007), the Court of Appeals for the Third Circuit concluded that an aggregate sanction of 930 days in disciplinary custody was within acceptable constitutional parameters.  Moreover, given that the sanctions were imposed as the result of 12 separate disciplinary charges against a prisoner who amassed a staggering 73 misconducts while incarcerated, the amount of disciplinary custody time imposed is not excessive under <u>Sandin</u> and <u>Young</u>.

Moreover, Plaintiff has not sufficiently presented facts showing that he was subject to conditions in disciplinary confinement that satisfy the <u>Sandin</u> requirement.  Based upon those factors and Plaintiff's failure to oppose this summary judgment argument, this Court finds that the Remaining Defendants are entitled to entry of summary judgment with respect to Jackson's claims that he was subjected to improper placements in both the SMU for either disciplinary or administrative reasons because the magnitude of his disciplinary placement did not implicate a

_____

12.  Three of Jackson's disciplinary proceedings during the relevant time period were presided over by other hearing examiners.

25

protected liberty interest.[13]   The request for entry of summary

judgment with respect to the due process claims will be granted.

## Access to the Courts

Plaintiff alleges that upon his arrival at SCI-Camp Hill

several items of personal legal materials were improperly

confiscated.  It is also alleged that there was interference with

his legal mail, his access to the SMU mini-law library was

restricted and that other items of legal materials were taken,

damaged, or read during subsequent periodic cell searches.  Jackson

vaguely indicates that he required the confiscated materials in

order to properly pursue a criminal appeal as well as a civil

---

13.  Moreover, based upon a review of the undisputed record,
Hearing Examiner Reisinger's actions satisfied the requirement
Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), and
Superintendent, Massachusetts Correctional Inst. at Walpole v.
Hill, 472 U.S. 445, 453-56 (1985).

In Wolff, the Supreme Court recognized that "prison
disciplinary proceedings are not part of a criminal prosecution,
and the full panoply of rights due a defendant in such proceedings
does not apply." Id. at 556.  Nonetheless, the Supreme Court held
that a prisoner facing serious institutional sanctions is entitled
to some procedural protection before penalties can be imposed.  Id.
at 563-71.  The Supreme Court set forth five requirements of due
process in a prison disciplinary proceeding: (1) the right to
appear before an impartial decision-making body; (2) twenty-four
hour advance written notice of the charges; (3) an opportunity to
call witnesses and present documentary evidence, provided the
presentation of such does not threaten institutional safety or
correctional goals; (4) assistance from an inmate representative,
if the charged inmate is illiterate or if complex issues are
involved; (5) a written decision by the fact finders as to the
evidence relied upon and the rationale behind their disciplinary
action. Id.  An additional procedural requirement was set forth in
Hill--the Court held that there must be some evidence which
supports the conclusion of the disciplinary tribunal.

rights action which he filed regarding aspects of his prior confinement at SCI-Graterford.[14]

Remaining Defendants assert that any injury suffered by Plaintiff to any litigation effort "was due to his own failure." Doc. 133, p. 46. They add that the undisputed record shows that the Plaintiff himself destroyed some of his own legal papers in an effort to hinder a cell extraction. Moreover, there are no facts alleged which could establish that the actions attributed to any Remaining Defendant caused Plaintiff to suffer an injury to a non-frivolous legal effort. As noted above, Jackson has not opposed this argument.

Prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts. "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees." Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to

---

14. Jackson indicates that he lost two key defendants in his civil rights action because of the October 18, 2007, confiscation of a legal envelope.

set forth a viable claim under <u>Bounds</u>, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation efforts.  Under the standards mandated by <u>Lewis</u>, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury.  <u>See</u> <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that <u>Lewis</u> effectively requires a showing of actual injury where interference with legal mail is alleged).

A declaration under penalty of perjury by Property Officer Adam Huber provides that SMU inmates are only allowed to retain one box of written materials in their cells.  <u>See</u> Doc. 131-4, ¶ 4.  The remaining property must be placed in four record center boxes of property which are held in the SMU storage room.  SMU prisoners are also only permitted to store up to 10 books.  Any excess property is either mailed out or destroyed.

Huber states that upon Plaintiff's arrival at the SCI-Camp Hill SMU his property was inventoried.  Inmate Jackson was in possession of items that were deemed to be contraband including tax forms, altered playing cards, a broken television antenna, and an excessive amount of books.[15]  Huber avers that no religious or legal materials were confiscated.  <u>See</u> <u>id.</u> at ¶ 25.

---

15.  It was also determined that he had excess sneakers and toilerty items.  As a result a pair of his sneakers were confiscated and at Jackson's direction were destroyed.  <u>See</u> <u>id.</u> at ¶ 18.

It is undisputed that when he arrived at SCI-Camp Hill, Plaintiff had a civil rights action, Jackson v. Beard, No. 07-CV-2164, pending in the United States District Court for the Eastern District of Pennsylvania.  He also had a criminal appeal, Jackson v. DiGuglielmo, No. 07-1066,  pending in the United States Court of Appeals for the Third Circuit.

Jackson was housed in the SCI-Camp Hill SMU from October 3, 2007, to March 9, 2009.  A review of the docket from his Eastern District civil rights case shows that during said period Plaintiff made multiple filings in that matter, including a July 18, 2008, submission of an amended complaint.[16]  Jackson's action remained pending in the eastern District until September 29, 2009, and there is no indication that he suffered any adverse action as a result of any of the actions attributed to the Remaining Defendants in this action.  This determination is bolstered by the fact that Plaintiff has not even opposed the pending summary judgment motion.

Second, with respect to the federal court challenge to his criminal conviction, Jackson's request for a certificate of appealability was dismissed by the Third Circuit Court of Appeals on October 2, 2007, on the basis that his action was an unauthorized second or successive habeas corpus petition.  Since this adverse decision was entered the day before Jackson even entered the SCI-Camp Hill SMU, the requirements of Lewis were clearly not satisfied.  Based upon an application of Lewis to the undisputed facts, the unopposed request for summary judgment will

---

16.  See Doc. 131-6.

be granted with respect to Plaintiff's denial of access to the courts claims.

## **Excessive Force**

Remaining Defendants' next argument maintains that they are also entitled to entry of summary judgment in regards to the assertions of excessive force since the force exercised against the Plaintiff was appropriate under the circumstances and because Jackson suffered little to no injury. See Doc. 133, p. 48.

A correctional officer's use of force in order to constitute cruel and unusual punishment, must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if

repugnant to the conscience of mankind, may be constitutionally

significant).  As explained in <u>Fuentes</u>:

> Resolution of an Eighth Amendment claim
> therefore "mandate[s] an inquiry into a
> prison official's state of mind." <u>Wilson</u>
> <u>v. Seiter</u>, 501 U.S. 294, 299, 111 S. Ct.
> 2321, 115 L. Ed. 2d 271 (1991).  Two
> considerations define that inquiry.  We
> must first determine if the deprivation
> was sufficiently serious to fall within
> the Eighth Amendment's zone of
> protections.  <u>Id.</u> at 298, 111 S. Ct. 2321.
> If not, our inquiry is at an end.
> However, if the deprivation is
> sufficiently serious, we must determine if
> the officials acted with a sufficiently
> culpable state of mind.  <u>Id.</u>  In other
> words, we must determine if they were
> motivated by a desire to inflict
> unnecessary and wanton pain.  "What is
> necessary to establish an 'unnecessary and
> wanton infliction of pain. . .' varies
> according to the nature of the alleged
> constitutional violation." <u>Hudson v.</u>
> <u>McMillan</u>, 503 U.S. 1, 5, 112 S. Ct. 995,
> 117 L. Ed. 2d 156 (1992).

206 F.3d at 344.

Remaining Defendants acknowledge that on January 20, 2009,

force was used against the Plaintiff because he refused numerous

orders to allow officers to handcuff him so that he could be

removed from his cell for a security cell search.  <u>See</u> Doc. 133, p.

49.  Specifically, after the use of a negotiator failed, pepper

spray was used against Jackson.  As a result, Plaintiff complied

with orders to be handcuffed and was walked to a medical cell where

he refused medical treatment.  The prisoner displayed no visible

signs of injury other than eye redness.  In support of their

summary judgment request, they have submitted a videotape which

documented the incident.  <u>See</u> Doc. 131, App. Exhibit 11.

31

The use of mace-type sprays by correctional officials has been found to be constitutionally acceptable under certain circumstances. See Banks v. Mozingo, 423 Fed. Appx. 123, 126 (3d Cir. 2011); Travillion v. Leon, 248 Fed. Appx. 3563 (3d Cir. 2007).

Based upon the undisputed facts of this matter, notably the videotape evidence, the responding correctional staff was faced with a situation involving a prisoner with a history of disruptive behavior and which required an immediate response. As such, and noting that it is undisputed that Plaintiff was housed in the SMU, had a lengthy history of disciplinary infractions, and was being persistently uncooperative, this Court concurs that Plaintiff was a prisoner who required cautious treatment.

Second, the responding correctional officers initially attempted to verbally resolve the situation. It is also noted that the use of chemical agents was not prolonged or excessive. Furthermore, there is no claim or facts establishing that Plaintiff suffered any injury as a result of the employment of chemical agents.

Given those undisputed circumstances, and Plaintiff's failure to address this argument, there is simply no factual support for a claim under Whitley and Fuentes that the undisputed limited use of pepper spray was motivated by a desire to inflict unnecessary and wanton pain. Rather, the limited application of pepper spray was clearly a good faith effort and reasonable response to a potentially dangerous situation which did not rise to the level of a constitutional excessive force violation.

Remaining Defendants also acknowledge that on April 17, 2008, the Plaintiff was removed from a disciplinary hearing by COs Bridwell, Blosser, and Brant after he began spitting pieces of a styrofoam tray at or near a correctional officer.  See Doc. 133, p. 50.  The only injury allegedly suffered by Jackson was a bleeding wrist which was examined by a nurse who noted that the inmate had no injuries.

A declaration under penalty of perjury by Major Paul Leggore (Doc. 131-16) states that he conducted an investigation into the incident.  Leggore states that the Plaintiff refused to provide a statement and that he interviewed all of the COs who were involved as well as Hearing Examiner Barrett who was also present.  All of those individuals denied witnessing or using excessive force.  See id. at ¶ 17.

A misconduct report prepared by CO Bidwell states that during the April 17, 2008, disciplinary hearing, he noticed that Plaintiff had something in his mouth and ordered him to spit it out, the Plaintiff spit out an apple stem and continued to spit at Bidwell and CO Blosser who was also present.  When he refused to obey an order to stop spitting at the two officers, he was escorted from the hearing.  See id. at Exhibit A.  Institutional medical records submitted by Remaining Defendants show that Jackson was examined by RN Minnich who reported no bleeding or noticeable injury.  See id. at Exhibit B.

In addition, the Plaintiff refused to provide Security Officer Soto with a statement regarding the incident.  See id. at

33

Exhibit C.  It is further noted that Plaintiff has not opposed the Remaining Defendants' argument.  Based upon those considerations this Court also concludes that entry of summary judgment is appropriate with respect to the April 17, 2008 incident.

## Conditions of Confinement

Jackson was housed in the SCI-Camp Hill SMU from October 3, 2007, to March 9, 2009.  Plaintiff raises multiple claims of retaliatory deprivation of meal trays and being served with adulterated food.  See Doc. 66, pp. 18-22, 25.  Jackson was also purportedly housed in an unsanitary SMU cell which had a leaking toilet, no linen, a blinking security light, no cleaning supplies, with no shoes or clothes.  See id. at pp. 9, 12, 69-71. Plaintiff additionally indicates that he was not provided with adequate recreation, showers, or access to the mini-law library.

Remaining Defendants contend that Jackson himself was responsible for any missed meals.  See Doc. 133, p. 52.  Moreover, any SMU cells in which the Plaintiff was housed were cleaned prior to his placement.  Jackson was also provided with a clean SMU jumpsuit, footwear, linens, and a mattress.  Finally, any restrictions on privileges and items imposed against the Plaintiff were due to SMU regulations or were put in place for a temporary period of time after the Plaintiff committed disciplinary infractions.  See id. at p. 53.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing,

34

shelter, sanitation, medical care and personal safety.  See Farmer
v. Brennan, 511 U.S. 825, 832 (1994).  Prison conditions may amount
to cruel and unusual punishment if they cause "unquestioned and
serious deprivations of basic human needs ... [that] deprive
inmates of the minimal civilized measure of life's necessities."
Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d
Cir. 2000).

A declaration under penalty of perjury by Unit Manager
Chambers provides that for security reasons SMU prisoners change
cells every 90 days and they are also subject to frequent cell
searches.  See Doc. 131-1.  Chambers adds that upon his arrival
Plaintiff was placed in the SMU because he had outstanding
disciplinary custody time to serve.  The cell Plaintiff was
initially housed in "was clean, the cell water was on, and the sink
and toilet were operational."  Id. at ¶ 33.

Chambers adds that although Plaintiff claims that he was
denied meals, it is the inmate himself who refused numerous meals
throughout his SMU confinement by either failing to stand at his
cell door with his cell light on when his meals were delivered as
required by SMU policy or by verbally refusing meals.

When Plaintiff refused several consecutive meals, he refused
to state his reasons for doing so to Chambers.  After a one week
period of refusing meals, during which he was evaluated by a staff
physician, the inmate began eating again.

While in the SMU Plaintiff was issued 15 misconduct charges.
As a result of his continued disruptive behavior including threats

35

towards staff and other prisoners, Plaintiff was placed on recreation, showering, cell cleaning and shaving restrictions for temporary periods at various times. The videotape evidence submitted by the Remaining Defendants clearly shows that the Plaintiff was fully clothed while in the SMU.

It is noted that the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers. See Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers during period of placement in administrative detention found not to be Eighth Amendment violation); Briggs v. Heidlebaugh, No. Civ. A. 96-3884, 1997 WL 318081, at *3 (E.D. Pa. 1997)(denial of showers for two weeks is not a constitutional violation; DiFilippo v. Vaughn, No. Civ. A. 95-909, 1996 WL 355336, at *5 (E.D. Pa. 1996)(Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers). Accordingly, Plaintiff's vague assertion that his showering privileges were at times curtailed does not rise to the level of a constitutional violation.

Second, the denial of recreation for thirteen days does not amount to cruel and unusual punishment. Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989). The halting of recreation during emergency lock downs "not objectively serious enough to warrant constitutional protection." Bacon v. Minner, 229 Fed. Appx. 96, 99 (3d Cir. 2007). Based upon an application of the Knight and Bacon reasoning, short term denial of recreational privileges does not rise to the level of a viable constitutional violation.

36

It has also been recognized that "continuous exposure to low wattage night time security lighting may be permissible based on legitimate security concerns." Sims v. Piazza, No. 3:09-CV-0033, 2009 WL 3147800, at *23 (M.D. Pa. Sept. 28, 2009)(Kosik, J.); King v. Frank, 371 F. Supp. 2d 977, 984-85 (W.D. Wisc. 2005). Similarly, in Brown v. Martinez, Civ. No. 3:CV-03-2392, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007), it was concluded that the presence of a 15 watt security night light in a prisoner's cell was necessary for night time institutional security and thus did not give rise to a constitutional violation.

Finally, in Blount v. Folino, Civ. A. No. 10-697, 2011 WL 2489894, at *13 (W.D. Pa. June 21, 2011), the district court concluded "service of food on unsanitary trays does not present an unreasonable risk of harm" as required to set forth a valid constitutional claim. Likewise the use of eating utensils that were not properly washed does not constitute cruel and unusual punishment. See Blaxton v. Boca Grande Foods, No. 4:08cv350-WS, 2008 WL 4888852, at *2 (N.D. Fla. Nov. 12, 2008). Moreover, prison officials cannot be held responsible when an inmate refuses to accept a meal. It is also noted that undisputed prison records clearly contradict Plaintiff's claim that he suffered substantial weight loss while in the SMU. Moreover, the images of Plaintiff in the submitted videotape evidence do not reflect that he was emaciated.

Based upon an application of the above standards to the undisputed facts, the unopposed summary judgment will be granted.

37

For the reasons set forth above the totality of the circumstances of the Plaintiff's SMU incarceration during the relevant time period did not include such serious deprivations of basic human needs as to set forth a viable claim of being subjected to unconstitutional conditions of confinement.  Jackson's vague assertions that he was subjected to unconstitutional conditions while housed in the SCI-Camp Hill SMU will not be allowed to proceed given the substantial evidence submitted by the Remaining Defendants.

**Conspiracy**

The final summary judgment argument contends that the Amended Complaint makes only a conclusory claim of conspiracy.  <u>See</u> Doc. 133, p. 53.  Since there are no facts asserted showing any agreement in furtherance of the alleged constitutional violation, Remaining Defendants conclude that a viable conspiracy claim has not been stated.  Once again, it is noted that this argument is unopposed.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1079 (1993); <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations."  <u>Rose</u>, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth

38

allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." <u>Shearin v. E.F. Hutton Group, Inc.</u>, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377; <u>Durre</u>, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. <u>Id.</u>; <u>Rose</u>, 871 F.2d at 366; <u>Young</u>, 926 F.2d at 1405 n.16; <u>Chicarelli v. Plymouth Garden Apartments</u>, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. <u>Young v. Kann</u>, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact set forth in the Amended Complaint that reasonably suggest the presence of an agreement or concerted activity among the Remaining Defendants. Although Jackson makes repeated claims of conspiracy, he has not alleged any facts showing any communication or cooperation among any Remaining Defendants from which an agreement could be inferred. While this Court agrees that Plaintiff has set forth multiple claims of

39

constitutional misconduct by various prison staff members, his Amended Complaint has not adequately alleged that those actions were the result of a conspiracy.  The request for entry of summary judgment will be granted with respect to the claim of conspiracy.

## Verbal Harassament

The Amended Complaint includes multiple allegations of verbal harassment and racial slurs attributed to a variety of the SMU Defendants.

The use of words generally cannot constitute an assault actionable under § 1983.  Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.  Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

40

Verbal harassment with some accompanying reinforcing act, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).  Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient.  See Hart v. Whalen, Civ. A. No. 3:CV-08-0828, 2008 WL 4107651, at *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, Civ. A. No. 00-1557, 2004 WL 1793018, at *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist, were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal threats and racial slurs allegedly voiced against Jackson were accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas.  More importantly, it is not asserted that the alleged verbal abuse was accompanied by any physically intrusive behavior.  Given the circumstances described by Plaintiff, the purported verbal remarks attributed to the Defendants were not of such magnitude to shock the conscience as contemplated by this Court in  S.M. v. Lakeland School District,

148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and thus, did not rise to the level of a constitutional violation.

### Conclusion

    For the reasons discussed above, Remaining Defendants' motion for summary judgment (Doc. 120) is granted.
An appropriate Order will enter.


                         _____S/Richard P. Conaboy_____
                                 RICHARD P. CONABOY
                                 United States District Judge


DATED: MARCH 24, 2015